IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Jeanetta W. Dayse, | ) Civil Action No.3:04-22462-MJP-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Dr. James G. Roche, Secretary, | ) |
| Department of the Air Force, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, Jeanetta W. Dayse ("Dayse"), is a former civilian employee of the Department of the Air Force at Shaw Air Force Base. She filed her pro se complaint on October 5, 2004, with an amendment on October 29, 2004. Defendant filed a motion for summary judgment on November 1, 2005. In that motion, defendant characterized Dayse's claims as disparate treatment based on race and retaliation. Because Dayse is pro se, an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued on November 9, 2005. Dayse filed a lengthy response with supporting documentation on December 12, 2005. In that response, Dayse appears to limit her claims to only those of Title VII retaliation (Pl. Mem. 5-6). Defendant filed a reply memorandum on January 10, 2006.

**Discussion**

In her complaint, Dayse alleges:

> My evaluations were lowered, my job description was altered and responsibilities were taken from me. I was told to complete network jobs without the proper resources, specifically I was told not to contact Base Network Control Center (BNCC). At every possible opportunity I was written up. I was written up for complaining about my supervisor and a term

> that was used on my behalf by my supervisor (the 400 mile screwdriver want work). Whenever I asked a question about anything I was written up as being disrespectful. Lastly, I was verbally given false information on how cell phones could be used and charges paid. Others were allowed to pay cell phone charges, but I was not. All these things happened to me after I was reinstated due to a EEO complaint based on race, (black) and Sex (female) against Mr. Donald Cook, caucasian male and Deputy Director of Services. The complaint was mediated and settled through the local agency. Most of the people involved in the EEO complaint were involved in my final demise.

In the prayer to the complaint, Dayse asks that she be "reinstated with full back pay and benefits." The amendment to the complaint filed October 29, 2004, is actually a copy of the decision of the EEOC in one of Dayse's cases in which she asserted that her termination was retaliatory.

Pro se complaints are not held to the same pleading requirements as those drafted by attorneys, and they must be liberally construed. Boag v. MacDougall, 454 U.S. 364, 365 (1984). Discovery is frequently used to define the claims in a pro se complaint. Bolding v. Holshouser, 575 F.2d 461, 465-66 (4th Cir. 1978). First, defendant does not recognize and discuss Dayse's basic claims. This is certainly due, in large part, to the inartful drafting of the pro se complaint. Defendant made an attempt to identify Dayse's claims by reviewing her EEOC cases with her during her deposition. (Pl. Dep. 57-58). However, it appears this attempt failed to clarify the claims.

Defendant's brief in support of his motion for summary judgment and his reply brief suffer from several deficiencies. These deficiencies compel a recommendation that defendant's motion for summary judgment be denied in part.

The record in this case shows that Dayse was terminated in April of 2001 for improperly using a government vehicle. (Pl. Dep. 40). Dayse filed an action with the Merit Systems Protection Board which resulted in her reinstatement effective October 21, 2001. Dayse's allegations involve

discrimination and retaliation after her reinstatement.[1]  As noted above, Dayse has abandoned her claims based on disparate treatment leaving only her retaliation claims for review.

Defendant lists the disciplinary action taken against Dayse after her reinstatement on page 4 of his memorandum in support of summary judgment.  The thrust of Dayse's complaint is that after she was reinstated, she was reprimanded, admonished, suspended and terminated in retaliation for her previous EEOC activity.  Instead of discussing these issues, defendant focuses on related, underlying events, i.e., performance evaluation, job duties, security clearance, one reprimand based on e-mails, and government cell phone abuse. (Def. Mem. 7-14).

Second, defendant discusses disparate treatment and retaliation together presenting no cogent argument with respect to either.  Defendant recognizes that plaintiff may be required to establish a prima facie case of discrimination using a McDonnell Douglas Corp. v. Green[2] framework, but the only standard cited is for a failure to hire which has no application to this case.  Defendant cites no framework at all with respect to Dayse's retaliation claims, and as noted above, makes a confusing argument blending retaliation with disparate treatment.

Because Dayse was a Federal employee, her claims are necessarily brought under 42 U.S.C. § 2000e-16 rather than 2000e-3(a).  Retaliation is not mentioned in the language of § 2000e-16, but it is generally understood that Title VII's retaliation provisions are incorporated into § 2000e-16. Hale v. Marsh, 808 F.2d 616, 619 (7th Cir. 1986) and Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

To establish a prima facie case of retaliation, it must be demonstrated that:

---

[1] The only narrative in the record which addresses these events in an understandable fashion is the affidavit of Charles R. Rupp ("Rupp Aff., ¶ __") attached to defendant's reply memorandum.

[2] 411 U.S. 792 (1973).

>   (1)   the employee engaged in protected activity;
>
>   (2)   the employer took some adverse employment action against the employee; and
>
>   (3)   a causal connection existed between the protected activity and the adverse action.

See Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998).   If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that the adverse action was imposed because the plaintiff engaged in protected activity.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

Defendant makes no argument that Dayse has not established a prima facie case of retaliation, but injects some aspects of the above framework into his discussion.  For instance, defendant argues that Dayse "has failed to show that her May 2002 (performance) evaluation was an adverse action."[3] (Def. Mem., 8).  Although it is not clear, defendant appears to concede in his reply brief that Dayse has established a prima facie case of retaliation but that defendant had legitimate, non-retaliatory reasons for disciplining her.

---

[3]Defendant also states that "(a) retaliatory downgrading of a performance evaluation could constitute an adverse employment action, if it was used 'to detrimentally after the terms or conditions of the recipient's employment.'" Id. at 7 quoting Von Gunten v. Maryland, 243 F.3d 858, 867 (4th Cir. 2001).  First, the undersigned notes that the Supreme Court rejected the Fourth Circuit's definition of "adverse employment action" in Burlington Northern & Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405 (2006), a case decided after defendant's briefs were filed. Second, Rupp states that Dayse's specific complaint about the May 2002 appraisal dealt with "promotion appraisal factors" which would seem to indicate that performance appraisal limited her opportunity for promotion, an adverse action under any definition. (Rupp Aff. ¶¶ 22-26).

Last, defendant argues in his initial brief that the "mixed motive" analysis as defined in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) does not apply to this case. (Def. Mem., 4). However, defendant makes only a passing reference to this concept. Dayse insists that she is entitled to a mixed motive analysis but makes no real argument about the issue. (Pl. Mem., 6). Defendant makes no further mention of the issue in his reply memorandum. Thus, it is not fully briefed.

The Civil Rights Act of 1991 amended Title VII to add 42 U.S.C. § 2000e-2(m) which states:

> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

The commentators and courts universally construed this amendment to be a Congressional response to the Supreme Court's decision in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), which held that in a mixed motive case, the employer could escape liability by proving that it would have made the same decision even in the absence of the discriminatory motivation. The effect of the amendment was to limit the employees' remedies in a mixed motive case to those prescribed in 42 U.S.C. § 2000e-5(g)(2)(B). Courts required the production of direct evidence discrimination in mixed motive cases when the plaintiff elected to proceed under this theory. Desert Palace held that direct evidence was not required.

In the first post-Desert Palace decision, Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277 (4th Cir. 2004) (en banc), the Fourth Circuit traced the evolution of Title VII discrimination cases and described the two methods a plaintiff can use to avert summary judgment: (1) the mixed motive theory, and (2) the McDonnell Douglas "pretext" framework. The Court recognized that Desert Palace overruled the requirement of direct evidence to proceed under the mixed motive theory and held that "(r)egardless of the type of evidence offered by a plaintiff as support for her

5

discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '(t)he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" Hill, 354 F.3d at 286 quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 153.  Implicit in the Hill decision is that both the pretext framework and the mixed motive analysis remain valid and that Desert Palace extends to the summary judgment stage as well as jury instructions.

In the second case, EEOC v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160 (4th Cir. 2004), the Fourth Circuit indicated that a plaintiff may proceed under a pretext framework or a mixed motive framework in an ADEA case.  The Fourth Circuit reversed the District Court's grant of summary judgment based on the lower court's mixed motive analysis.  The Court held that the plaintiff must show that the adverse action was motivated by both legitimate and impermissible reasons.  "If the [plaintiff] makes this showing, [defendant] can nonetheless avoid liability by proving that it would have terminated [plaintiff] even in the absence of a discriminatory motive." Id. at 164.

Neither Hill v. Lockheed Martin Logistics Management, Inc. nor EEOC v. Warfield-Rohr Casket Co., Inc. rely on an articulated analytical framework for their decisions.  As discussed below, some District Courts still seek to employ traditional, though modified, frameworks in employment discrimination cases.

Lower courts have been grappling with the effect of the Desert Palace decision.  Two divergent cases represent the predominant views.  In Dare v. Wal-Mart Stores, Inc., 267 F.Supp.2d 987 (D.Minn. 2003), the court concluded that Desert Palace applies to single motive cases as well

as mixed motive cases and held that the McDonnell Douglas paradigm had been eviscerated. The result mandated by Dare is to do away with the distinctions between single motive and mixed motive cases and to analyze Title VII under the analysis heretofore reserved to mixed motive cases as expanded by Desert Palace. On the other hand, most courts have retained the single motive/ mixed motive distinction, applied Desert Palace to mixed motive cases, and to the final stage of McDonnell Douglas analysis. See Dunbar v. Pepsi-Cola General Bottlers of Iowa, 285 F.Supp.2d 1180 (N.D.Iowa 2003), Rishel v. Nationwide Mut. Ins. Co., 297 F.Supp.2d 854 (M.D.N.C. 2003) and Disher v. Weaver, 308 F.Supp.2d 614 (M.D.N.C. 2004). The post Desert Palace cases of the Fourth Circuit discussed above appear to favor the Dunbar approach.

This analysis requires modification of the final phase of the McDonnell Douglas scheme to apply the Desert Palace holding. After the plaintiff has demonstrated a prima facie case of discrimination and the defendant has articulated a legitimate nondiscriminatory reason for the employment decision, the "plaintiff must then offer evidence to create a genuine issue of material fact" either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is plaintiff's protected characteristic (mixed-motive alternative)." Rishel, 297 F.Supp.2d at 865, quoting Dunbar, 285 F.Supp.2d at 1198.

The parties have provided insufficient argument for the Court to determine if a mixed motive analysis is applicable to Dayse's retaliation claims and how such analysis would apply.

## **Conclusion**

7

Based on the above discussion, it is recommended that defendant's motion for summary judgment be granted as to plaintiff's disparate treatment claims and denied as to her retaliation claim.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

September 14, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
